John Albert BIBBS, Movant, Appellant,

v.

STATE of Missouri, Respondent.

No. 34818.

Missouri Court of Appeals,
St. Louis District,
Division One.

Oct. 30, 1973.

Motion for Rehearing or Transfer Denied
Dec. 7, 1973.

Application to Transfer Denied Feb. 11, 1974.

Bryan, Cave, McPheeters & McRoberts, Francis X. Duda, Lewis C. Green, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., Thomas C. Muldoon, Asst. Circuit Atty. St. Louis, for respondent.

WEIER, Judge.

John Albert Bibbs was convicted of the offense of assault with intent to kill with malice aforethought. § 559.180.[1] A jury determined that he was guilty of the offense charged, and under the Second Offenders Act (§ 556.280), his punishment was fixed for a term of 25 years. This conviction was affirmed. State v. Bibbs, 461 S.W.2d 755 (Mo.1970). Defendant now contends in this proceeding under Rule 27.26 that he was deprived of his right to a fair trial under the sixth and fourteenth amendments to the United States Constitution for three reasons. First, he was shackled in the presence of the jury during the first day of trial. Second, he was denied effective assistance of counsel. Third, he was denied a hearing and a ruling by the trial court on the question of his competency to stand trial. After an evidentiary hearing in the trial court, these issues were decided against movant. He now appeals. We discuss the contentions of error in numerical sequence as presented.

The first contention of error is based upon the rule in Missouri, which has been well established since State v. Kring, 64 Mo. 591 (1877), that there must be some reason, based on the conduct of the prison-

---

1. All section references are to RSMo 1969, V.A.M.S.

er, to permit the court to allow a prisoner to be brought before a jury with his hands chained. This rule is based upon the obvious prejudice that must be conceived in the minds of the jurors when viewing an accused in that condition, "* * * as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers." 64 Mo. at 593. On the other hand, however, the trial court is charged with maintaining an orderly procedure in the courtroom, and the judge may properly exercise his discretion in determining the restraints necessary to maintain order. State v. McGinnis, 441 S.W.2d 715, 717[1] (Mo.1969). To support such action on the part of the court, there must be some "good reason" arising during the trial [State v. Rice, 347 Mo. 812, 149 S.W.2d 347, 348[1, 2] (1941)] or "exceptional circumstances" [State v. Boone, 355 Mo. 550, 196 S.W.2d 794, 796[3] (1946)].

■ Here, defendant's conduct which constituted "good reason" or "exceptional circumstances" occurred during an evidentiary hearing concerning movant's request that his attorney be removed. When the court announced that it was not going to remove the attorney and appoint another one, defendant got up and announced in loud voice that he was not going to trial with his lawyer. He thereupon started moving in the direction of the bench which was also the direction of the door to the courtroom. In addition, the judge who presided at the hearing testified the defendant had refused to come out of his cell to the courtroom. The bailiff was instructed to bring him out forcibly, which he did. When defendant was brought into the courtroom, he was handcuffed. Prior to the charge on which he was being tried, defendant had been convicted of a homicide involving violence. He was being tried for another violent crime, a charge of assault with intent to kill. In light of these circumstances, we see no abuse of the court's discretion in ordering the man to remain in handcuffs during the first day of the trial.

■ Movant's contention that he was denied effective assistance of counsel is grounded upon three specific omissions of his lawyer. First, he complains that his counsel failed to object to the decision of the court to shackle the movant in the presence of the jury. As previously indicated, the movant was being prosecuted for an assault with intent to kill. The evidence disclosed that while driving a stolen car he had suddenly stopped in front of a police automobile, fired shots at the occupant of the police vehicle, and then sped away. He had previously been convicted of three felonies. After the episode before the court during the evidentiary hearing as to replacement of counsel, it may well have occurred to plaintiff's counsel that it would be wiser for his client to be handcuffed than to have another commotion in the courtroom in front of the jury. This was a matter of trial strategy and we do not fault counsel by hindsight on decisions made in this area. Cheek v. State, 459 S. W.2d 278, 281[2] (Mo.1970).

We further note that counsel in his testimony in the hearing concerning this motion was apprehensive as to the action of his client, and had asked the court to provide two of the strongest bailiffs available and keep them behind his client at all times. In an atmosphere charged with rebellious behavior and in dealing with a man who had been known to translate emotional response into violent action, we believe counsel himself was entitled to as much protection as the judge, the officers of the court, and other persons attending the trial.

■ Movant's second specification of inadequacy alleges that counsel failed to adequately prepare his case or present exculpatory evidence. More specifically, the question is raised as to counsel's failure to rebut evidence concerning a stolen car which the movant was allegedly driving at

the time that he committed the assault. This allegedly could have been rebutted by the alibi testimony of movant's mother who was in the courtroom at the time, and by testimony of his sister supporting this alibi. Movant's counsel, however, testified at the motion hearing that he discussed the mother's testimony with her during the course of the trial. He concluded that her testimony in regard to identification would harm his client; therefore, he did not put her on the stand. The sister did not show up at the appointed time during the course of the trial, and when she came in late after the case was closed, he requested the court to let him have more time to put on her testimony. However, even though the court refused, upon his discussion with the sister of the facts to which she would testify, counsel concluded that it was fortunate that she did not come into the courtroom earlier because her testimony would have been the same as that of the mother, and it would have adversely affected his client's case. Refraining from calling certain witnesses is a matter of trial strategy and does not constitute ineffective representation. State v. Wilkinson, 423 S.W.2d 693, 696–697[1] (Mo.1968).

■ Further objection is made to the failure of movant's counsel at the time of trial to call the attention of the psychiatrist to certain medical records concerning treatment of the movant in 1968 and 1969 which the doctor stated "could be relevant" in determining the movant's competency at the time of trial. But these records would not have changed the psychiatrist's opinion that there was no evidence exhibited by defendant of any mental disease or defect that would affect his ability to know and appreciate the nature and wrongfulness of his act nor prevent him from cooperating with counsel in his own defense. This was brought out in the testimony of the psychiatrist at the evidentiary hearing when he reviewed these records and stated that they would not have changed his recommendation made prior to trial.

■ Another basis for the contention that movant was denied effective counsel at the time of trial was the failure of counsel to object to the introduction into evidence of a gun. This gun was displayed and offered for identification early in the trial without laying a foundation for its introduction. Thereafter, in an out-of-court hearing, the gun was excluded from the evidence as a result of the efforts of appointed counsel. Later, appointed counsel in his argument attempted to discredit the testimony regarding the gun. The prosecutor at this time objected and was sustained on the grounds that the gun was not in evidence. As a trial tactic, this could have been effective in establishing reasonable doubt in the minds of the jury since the jury was reminded at the time of argument that the court refused the attempt by the state to introduce the gun, that it was no longer in evidence, and they should not consider it in their verdict. Again we state the general and well established rule that an appellate court will not review or reassess by hindsight the judgment of defense counsel on questions of strategy, trial tactics, or trial decisions. Cheek v. State, *supra*, 459 S.W.2d 278, 281[2] (Mo.1970).

Movant's counsel at trial was an outstanding member of the bar with many years' experience in the practice of law. He had met with his client on a number of occasions. He had discussed the case with witnesses in the preparation for trial, and then he had made and presented to the court pre-trial motions on movant's behalf. During the course of the trial, he was vigilant in interposing objections. He subjected the state's witnesses to cross-examination. There is no charge that the trial was farcical or a mockery of justice. The movant received effective assistance of counsel so that he had a fair trial. In this, counsel for movant at time of trial met the standards required in the discharge of his professional responsibilities. Hall v. State, 496 S.W.2d 300, 303[2, 3] (Mo.App.1973).

 The third and final contention by movant is that he was denied his constitutional and statutory rights to a hearing on his competency to stand trial. Based upon a motion filed by movant's counsel for a psychiatric examination, defendant had been examined by a psychiatrist, and a report of that examination had been received by the court indicating that the movant did not possess any mental disease which would prevent him from understanding the nature of the act which he had allegedly committed or preclude him from standing trial. There was never any attempt to contest the psychiatric report. Movant now contends that the granting of the psychiatric examination itself was a bona fide reason, as suggested in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), to hold a competency hearing. The trial record indicates that when the court took up the matter of the psychiatric examination just prior to the trial of the case, in the presence of the defendant, his counsel, and the attorney for the state, the court noted that the motion had been sustained, that the defendant had been ordered to Malcolm Bliss Hospital for mental examination, and that a medical report indicating no mental disease or defect had been filed with the court. No objection at that time was made to the finding in the report and no request was made for a hearing on the issue of competency. The report itself did not indicate that there should be a hearing on the issue of competency. § 552.020(6) states that if neither the state nor the accused nor his counsel contest the opinion of the psychiatrist in regard to the fitness of the defendant, the court may hold a hearing on its own motion. On the other hand, it does not require that the court shall hold a hearing on the issue when there is no contest or a determination sua sponte to hold a hearing. Griggs v. State, 479 S.W.2d 478, 480[1] (Mo.1972). The fact that the case was placed on the trial docket by the court of itself is tantamount to an order finding that the defendant was fit to proceed. Jones v. State, 471 S.W.2d 223, 226–227[2] (Mo.1971).

Our review in this proceeding is limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.26(j), V.A.M.R. Our review of the transcripts and briefs of counsel lead us to conclude that the trial court was not in error. The judgment denying the motion to vacate, set aside or correct the judgment is affirmed.

DOWD, C. J., and SIMEONE, J., concur.