**STATE of Missouri, Respondent,**

**v.**

**Hartford Bruce ROBINSON, Jr.,
Appellant.**

**No. KCD 26612.**

Missouri Court of Appeals,
Kansas City District.

March 4, 1974.

F. Cullen Cline, Public Defender, 13th Judicial Circuit, Columbia, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, and WASSERSTROM, JJ.

WASSERSTROM, Judge.

On this appeal from a conviction for rape, the defendant assigns several points of error. One of those points is that the trial court ordered the defendant to be shackled to his chair during one-half day of trial. Since that assignment requires reversal, this point calls for primary treatment.

I.

Anglo-American law early evolved the principle that an accused defendant has the right to appear before the jury free of shackles. A leading case in this country on that proposition is State v. Kring, 64 Mo. 591, 1. c. 592 (1877), in which the court held:

"From all these cases, it seems very clear, that without some good reason, authorizing the criminal court to depart from the general practice in England and in this country, the shackles of the prisoner, when brought before the jury for trial, should be removed.

" * * * There must be some reason, based on the conduct of the prisoner, at the time of the trial, to authorize so important a right to be forfeited. When the court allows a prisoner to be brought before a jury with his hands chained in irons, and refuses, on his application, or that of his counsel, to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers. * * * "

In the case of Illinois v. Allen, 397 U.S. 337, 1. c. 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), although involving the additional factor of gagging, the United States Supreme Court expressed graphically the general judicial reaction to imposing physical restraints upon a defendant before a jury:

"But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."

See also Krauskopf, "Physical Restraint of the Defendant in the Courtroom," 15 St. Louis U.L.J. 351.

■ An exception to the foregoing general rule is permitted only where there exists "good reason" or "exceptional circumstances." State v. McGinnis, 441 S.W.2d 715 (Mo.1969); State v. Rice, 347 Mo. 812, 149 S.W.2d 347 (1941); State v. Richards, 467 S.W.2d 33 (Mo.1971); State v. Boone, 355 Mo. 550, 196 S.W.2d 794 (1946). Since the application of this test depends upon the particular facts in each case, it becomes necessary to now turn to the facts shown in the record here.

The underlying problem which gave rise to the situation now under consideration was that defendant became very dissatisfied with Mr. Roper, the public defender who had been appointed to defend him, and on the morning preceding trial he requested that Mr. Roper be discharged and that the court appoint a replacement. After the court declined to do so, defendant refused to sit at the counsel table with Mr. Roper. Later, defendant submitted a request that the jury be instructed that defendant did not desire to be represented by Mr. Roper. When the court disapproved this request, defendant arose at the close of the prosecutor's opening statement and stated to the jury that he refused Mr. Roper as his counsel and that Mr. Roper did not represent him in any way. The court promptly instructed the jury to disregard that statement.

Aside from that one mild incident in the presence of the jury, the trial proceeded the first morning without trouble. Toward the end of the morning session, the complaining witness commenced her testimony and just before the noon recess she had reached the point in her narrative where she was about to relate the details of the actual assault upon her in her bedroom.

When the judge returned from the luncheon recess, he received a report from the deputy sheriff that defendant was refusing to leave the jail and come to court on the ground that he considered Mr. Roper not his attorney. The deputy stated that defendant did not threaten any violence in connection with that—"he just refused to come." The judge thereupon directed the deputy sheriffs to obtain whatever assistance was necessary and to bring the defendant before the court by the use of no more than reasonable force.

Defendant was then promptly brought into the courtroom where the judge was informed that while there had been "a little mouth" and some pushing and shoving, there had been "no physical violence." Nevertheless, defendant without further ado was immediately handcuffed to a

chair. A motion by defense counsel that the handcuffs be removed was overruled, as was the defense motion for a mistrial. Defendant remained handcuffed in full view of the jury during the remainder of the first day of trial, which encompassed the conclusion of the witness' account of how she was beaten and raped.

It is to be noted that defendant had not caused any disruption of proceedings in the courtroom itself nor had he threatened to do so. Cases in this state in which shackling of a defendant before the jury has been held permissible all were based upon the existence of turbulent conduct by the defendant, which is missing here. For example, in a leading case, State v. McGinnis, 441 S.W.2d 715, 1. c. 717 (Mo. 1969), the defendant swung an arm and knocked papers off the counsel table, paced back and forth across the courtroom, addressed a number of disrespectful remarks to the court, and despite warnings by the judge, the defendant threatened to continue to disrupt trial proceedings. It was only in view of these aggravated "exceptional circumstances" that the Supreme Court approved the handcuffing of the defendant:

> "The record impels the conclusion that the trial court directed the appellant be handcuffed only after it became obvious that he intended to carry out his threat to disrupt completely the trial of his case."

Similar analysis can be made of the following Missouri cases in which shackling during trial has been permitted: State v. Richards, 467 S.W.2d 33 (Mo.1971); State v. Johnson, 499 S.W.2d 371 (Mo.1973); and State v. Bibbs, 504 S.W.2d 319 (Mo. App.1973).

The State relies especially on the opinion of the Missouri Court of Appeals, St. Louis District, in the *Bibbs* case, but that case is distinguishable on the facts. In *Bibbs,* the defendant had previously been convicted of a crime involving violence, and at the conclusion of an evidentiary hearing when the trial court refused substitution of defense counsel, defendant announced in a loud voice that he was not going to trial with his lawyer, and he "thereupon started moving in the direction of the bench which was also the direction of the door to the courtroom." Those factors explain the appellate court's ruling that "[i]n light of these circumstances, we see no abuse of the court's discretion in ordering the man to remain in handcuffs during the first day of the trial." By way of amplification, it should also be noted that in another connection, the Court of Appeals in *Bibbs* characterized the trial proceedings as "an atmosphere charged with rebellious behavior and in dealing with a man who had been known to translate emotional response into violent action." Also to be noted is that in *Bibbs,* no objection was made by defense trial counsel to defendant remaining handcuffed before the jury. The Court of Appeals justified that non-complaint as being a proper matter of self-protection by counsel as well as for the protection of the judge, officers of the court, and other persons attending the trial.

Not only was there an absence of violence or threat thereof by defendant, but additionally the trial judge here, even though faced with no emergency, gave no warning of any kind to the defendant before having him shackled to his chair. In this respect, the comments of Mr. Justice Brennan, concurring in Illinois v. Allen, 397 U.S. 337, 1. c. 350, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970), are particularly pertinent:

> "Of course, no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior."

The infringement upon defendant's rights in this case is emphasized by the reason which led the trial judge to impose shackles. That reason was defendant's refusal to come into the courtroom to attend

the continuance of his trial. The trial judge plainly had a right, and indeed a duty, to insist that the defendant be brought into the courtroom at that point, by force if necessary. However, the legitimate purpose for doing so was not to make defendant attend the trial, but rather so that the judge might ascertain the true facts, to explain to the defendant the importance and value to him of his right to be present at the trial, and to verify that the decision by the defendant not to attend was being made knowingly and voluntarily. This hearing would, of course, have to be outside the presence of the jury.[1] Once the judge had this opportunity to determine that defendant's choice was in fact voluntary, then the defendant has just as much a right to absent himself from the trial as he has to be present.

There was a time in the early development of Missouri law when a defendant had no right to waive his presence during a felony trial. That was so held in State v. Smith, 90 Mo. 37, 1 S.W. 753, 1. c. 755–756 (1886) (reported in the Southwest Reporter as State v. Crocket). That decision was based upon a reading of the statute which now appears as § 546.030, RSMo 1969, V.A.M.S. (also covered identically by present Rule 29.02, V.A.M.R.), as making presence of the defendant mandatory. However, the *Smith* case was subsequently disapproved in State v. McCrary, 365 Mo. 799, 287 S.W.2d 785 (1956), and the *McCrary* view has been reaffirmed in State v. Colbert, 344 S.W.2d 115 (Mo.1961). The entire law on this subject is thoroughly reviewed in State v. Drope, 462 S.W.2d 677 (Mo.1971), where presence at the trial was held to be a right of the defendant which can be waived by him. While some jurisdictions follow a different rule (see 21 Am.Jur.2d, Criminal Law, § 279, page 312), the majority rule in other states and in the federal courts is in accord with the present Missouri rule. In addition to the cases from other jurisdictions cited in State v. Drope, 462 S.W.2d 677 (Mo.1971), at 1. c. 683, see also the subsequent well reasoned opinion in People v. White, 18 Cal.App.3d 44, 95 Cal.Rptr. 576, 1. c. 581 (1971), which aptly observes:

"If the appellant can waive any trial at all by pleading guilty, no convincing reason appears why he may not waive the procedural safeguards which are incidents of the trial."[2]

■ The shackling of the defendant in this case during one-half day of the trial before the jury was necessarily prejudicial to his rights. This was particularly true under the circumstances of this case which involved the alleged rape of a white woman by a black man, and where the shackling occurred immediately before the rape victim reached her climatic testimony concerning the brutal details of the despicable assault upon her.

## II.

Since this case must be retried, a ruling now on certain instructions offered by the defendant, but refused by the court, will serve to avoid renewed dispute in that regard.

■ The first refused instruction in question is Instruction No. A:

"One of the issues in this case, on which the state has the burden of proof, is whether the defendant was present at the time and place the offense is alleged

---

1. In the *Bibbs* case, supra, the defendant was brought forcibly into the courtroom, in handcuffs. However, that was for the purpose of a special evidentiary hearing which was not part of the jury trial proper. It was not until the defendant made a threatening move toward the bench, that the court ordered that defendant remain in handcuffs during the trial itself.

2. It should be noted that California Penal Code § 1043 was amended in 1970 to permit a criminal non-capital trial to proceed even though a defendant has voluntarily absented himself. The *White* opinion, however, reaches its result independent of that statutory authorization.

 

to have been committed. The defendant is not required to prove that he was elsewhere. If all of the evidence or any lack of evidence in this case leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed, then you must find him not guilty."

While defendant seeks to justify this as a converse instruction, it must be noted that Instruction No. A follows Pattern Criminal Instruction No. 3.20, which is the one recommended for submission of a defense of alibi. Viewed in this light, Instruction No. A was properly refused since there was no evidence to support an alibi defense. Defendant himself did not testify nor did he offer any other evidence whatsoever. The State's evidence contained nothing tending to show that defendant was elsewhere at the time the rape occurred. There being no evidence to support the submission of a defense of alibi, Instruction No. A was properly refused. State v. McLane, 55 S.W. 2d 956 (Mo.1932); State v. Reeder, 395 S. W.2d 209 (Mo.1965); State v. Bess, 387 S.W.2d 575 (Mo.1965); State v. Jackson, 95 Mo. 623, 8 S.W. 749 (Mo.1888). Of course an instruction on alibi will be required if evidence in support is offered on retrial.

The second instruction in dispute is requested Instruction No. B:

"If you find and believe from the evidence that at the time of the alleged rape of Jill Downing Gibson, referred to in Instruction No. ——, the defendant was not present at the place the offense is alleged to have been committed, you must find the defendant not guilty of the offense of rape."

■ Defendant attempts to justify this instruction as a converse instruction, and in fact Instruction No. B does follow Pattern Instruction No. 3.04(a) which is a recommended form of converse instruction. However, this requested instruction was improper in that it failed to submit the negative of any proposition hypothesized in the State's principal case instruction. This same objection lies against requested Instruction No. A, and prevents either of these requested instructions from being considered as a proper converse instruction. State v. McWilliams, 331 S.W.2d 610 (Mo.1960).

The other points of error assigned by defendant need not be considered. Because of the infringement of defendant's rights in shackling him to his chair during the course of trial, the judgment is reversed and the case is remanded for a new trial.

All concur.